IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEITH HALE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 19-CV-00923 |
| THE NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION, d/b/a METRA, | ) ) Judge John J. Tharp, Jr. ) ) ) |
| Defendant. | ) ) |

## ORDER

For the reasons set forth in the statement below, the Defendant's Motion to Dismiss is granted in part and denied in part. See Statement for details. The Court grants the plaintiff leave to file an amended complaint consistent with this order by October 1, 2021. A telephone status hearing will be held on October 14, 2021 at 9:30 a.m. Telephone instructions will be provided in a separate docket entry.

## STATEMENT

Plaintiff Keith Hale brings discrimination and retaliation claims against the Northeast Illinois Regional Commuter Railroad Corporation ("Metra"). Hale worked as a police officer for Metra until 2018. He complains that he was suspended without pay, and eventually fired, under the pretext of a minor reporting violation. The real reason for the suspension, he alleges, was his race, and the firing was retaliation for his having filed a charge of discrimination with the Illinois Department of Human Rights. He asserts a right to relief under 42 U.S.C. §§ 1983 and 1981 against Metra, a municipal corporation, claiming that his treatment resulted from a custom or policy of disparate treatment of Black officers, such that Metra is liable under a *Monell* theory.

The facts alleged, which must be taken as true for purposes of this motion, are brief—curiously so. In July 2018, Hale's supervisor, a Sergeant, contacted him by radio and directed Hale to meet with him at a specific location (which the complaint does not identify). Second Am. Compl. ("SAC") ¶ 9, ECF No. 24. The Sergeant told Hale "not to kill himself" getting to the rendezvous. SAC ¶ 10. Hale then reported his location to dispatch and drove to the location specified by his supervisor. SAC ¶ 11. No further information about this meeting is alleged; the SAC simply goes on to state that, at the end of July, Metra took Hale out of service for delay in responding to his supervisor's call and for misreporting his location to dispatch. SAC ¶ 12. Taking an officer out of service is equivalent to a suspension without pay. SAC ¶ 13. Hale avers that he was subjected to this discipline on account of his race. SAC ¶ 14.

After he was taken out of service, Hale filed a charge of discrimination with the Illinois Department of Human Rights. In retaliation, he alleges, Metra terminated his employment

altogether on September 24, 2018. ¶ 17. Metra's pretext for firing him was that Hale was dishonest in reporting his location to dispatch and responding to the July call from his supervisor. ¶ 18.

Hale invokes 42 U.S.C. § 1983 in support of his discrimination and retaliation claims. Because Metra is a municipal corporation, he must plead, in accordance with *Monell v. Dept. of Soc. Serv. of City of New York*, that Metra acted pursuant a custom or policy that has the force of law. 436 U.S. 658, 695 (1978). To meet this standard, Hale alleges six instances in which white Metra police officers faced light or no discipline in response to equal or greater breaches. ¶¶ 22-40. These other episodes, Hale maintains, suffice to plausibly allege that Metra has a custom or policy of overlooking bad behavior by white officers, and that he was taken out of service and eventually fired because of this policy.

There is no bright-line rule defining a widespread custom or practice, though the Seventh Circuit has said that a plaintiff "must allege more than one, and sometimes more than three, instances of misconduct." *See Baskins v. Gilmore*, 2018 WL 4699847 *4 (N.D. Ill. 2018) *citing Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 3063 (7th Cir. 2011). The other cited instances of misconduct must be similar enough to the complained-of constitutional violation to make it plausible that the particular custom or practice had the force of law. *Baskins*, 2018 WL 4699847 at *4, *citing Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). There must be a causal link between the complained of custom or policy and the constitutional violation suffered by the plaintiff. *See, e.g. Thomas*, 604 F.3d at 306.

Metra argues that Hale has not plead enough instances of Metra's failure to discipline white officers to show a policy or custom of racial discrimination under *Monell*. It argues that because several of the instances of overlooked misconduct occurred after Hale's suspension, those cannot count, and after subtracting those incidents, Hale has only plead three incidents in attempting to establish a widespread custom. Reply 2, ECF No. 30. As an initial matter, the Court sees no reason to think that events that occurred after his suspension cannot support the existence of a widespread custom of discrimination.[1] If, indeed, Metra had a policy of subjecting black officers to discriminatory discipline at the time of the incident in question, one would expect to see evidence of the existence of that policy occurring both before, and after, the incident for which Hale was disciplined; mere chronology does not render post-incident examples irrelevant as a matter of law. Furthermore, in the face of Seventh Circuit precedent providing that no bright-line rule exists defining the number of incidents necessary to plead a widespread custom or practice, the Court declines to mechanically apply a "three-incident" bar at the pleading stage. Metra's arithmetic does not warrant dismissal of the discrimination claim.

Additionally, Metra discounts the episodes identified in the SAC as too dissimilar from Hale's suspension to support an inference that Metra practices discriminatory discipline against

---

[1] The authority cited by the defendant, *Connick v. Thompson*, 563 U.S. 51, 62-63 (2011), does not support that proposition. That case dealt with a *Monell* failure-to-train claim, where a plaintiff must show that a municipality acted with deliberate indifference in the face of incidents that should have put them on notice about poor training. *Id.*. This is not a failure-to-train case, and the question is not whether Metra was on notice and deliberately indifferent to its failure to discipline white officers.

African American officers. In fact, two of the examples are very similar: Hale pleads that a white sergeant told dispatch that he was in one location when in fact he was at another; Metra discovered the discrepancy but took no disciplinary action. SAC ¶¶ 27-29. Similarly, he alleges that a white officer engaged in union activities while on the clock; visiting locations that had nothing to do with his Metra duties and thus violating Metra rules, without reporting those movements to his superiors.

More importantly, the other instances of misconduct by white officers to which Hale points involve conduct significantly more serious than misreporting one's location. To avoid this problem, Metra advances an absurdly narrow characterization of Hale's argument: that Metra has a policy to ignore white officers' failure to report their locations while disciplining black officers who do the same. Hale's discriminatory discipline theory, however, is not limited to discipline imposed for a single type of transgression. Rather, his theory is that Metra's overlooks serious misconduct by white officers while throwing the book at African American officers for minor missteps. Evidence consistent with this theory is probative of whether Metra's intent in disciplining Hale was borne of legitimate concerns about the need for officers to accurately report their locations or to subject black officers to a more demanding disciplinary standard based on their race.

For example, Hale claims that a white Metra police officer watched a rape on his security camera feed, radioed dispatch to say that he was responding, but did nothing. This officer was not suspended or fired. SAC ¶¶ 23-25. Another white Metra police officer allegedly helped eight other officers cheat on an ethics exam but was not fired. *Id.* at ¶¶ 34-36. The other alleged wrongdoing by white officers is similarly more serious than failing to report; Hale claims that one officer failed a drug test and another misappropriated Metra funds. ¶¶ 36-40.

These events are sufficiently similar for the purposes of Hale's discrimination claims in that they all fall under the rubric of Metra's disciplinary procedures; the specific conduct underlying each officers' unpunished transgressions need not be identical. Additionally, by pleading the circumstances of his own punishment and comparing it to the more severe yet unpunished breaches by white officers, Hale has plausibly alleged a causal link between the alleged policy and the constitutional violation he suffered, that is, that he was disciplined pursuant to a racially discriminatory system of discipline.

While the Court anticipates that there may be more to Hale's story—he alleges, in essence, that he was suspended without pay for doing nothing wrong—the Court cannot fill in those gaps at the pleading stage. The thrust of the complaint is clear enough to put Metra on notice of the claim and allow it to prepare a defense: Hale alleges that Metra has a widespread custom or practice of ignoring serious misconduct by white officers, but it metes out harsh discipline to African American officers for minor (or imagined) wrongdoing. Hale has plead enough examples of this policy in action to allow the court to draw the reasonable inference that Metra maintained a widespread custom or practice of intentional discrimination in disciplining officers. And because Hale has successfully pled a § 1983 claim, the court retains jurisdiction over his state law claims under the Illinois Human Rights Act, 775 LCS 5/2-101.

The same cannot be said of Hale's retaliation claim; the SAC has no allegations at all to support a claim that Metra had a widespread practice of retaliating against employees who filed

3

complaints with the Illinois Department of Human Rights. As such, this claim fails under a §1983 theory. That does not mean, however, that the retaliation claim necessarily fails. Plaintiffs are not required to plead legal theories. *See, e.g., Joseph v. Elan Motorsports Techs. Racing Corp.,* 638 F.3d 555, 561 (7th Cir. 2011). The complaint would also seemingly survive under a Title VII theory, for while Metra is somewhat insulated from §§ 1983 and 1981 liability under *Monell*, it is still an "employer" under Title VII. 42 U.S.C. § 2000e. Hale has not defended his complaint under a Title VII theory, however, and the Court will not do it for him.

      Accordingly, the discrimination claim survives; the retaliation claim set forth in the second amended complaint is dismissed without prejudice, but Hale will be given one more opportunity to amend his complaint and allege facts that may support any other theory of liability that states a plausible claim for relief.

Date: September 10, 2021

John J. Tharp, Jr.
United States District Judge